**WO** SC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anibal Ortiz, | No. CV 09-0396-PHX-MHM (JRI) |
| Plaintiff, | **ORDER** |
| vs. | |
| Todd Thomas, et al., | |
| Defendants. | |

Plaintiff Anibal Ortiz, who is confined in the Saguaro Correctional Center (SCC), a Corrections Corporation of America (CCA) facility in Eloy, Arizona, has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*.[1] (Doc.# 1, 3.)[2] The Court will order Defendants Landreth, Brinson, Rocha, and Macci to answer Count I of the Complaint and will dismiss the remaining claims and Defendants without prejudice.

**I.   Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $5.84. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income each time the amount

---

[1] Plaintiff is in custody of CCA pursuant to a contract with the State of Hawaii.

[2] "Doc.#" refers to the docket number of filings in this case.

1  in the account exceeds $10.00.  28 U.S.C. § 1915(b)(2).  The Court will enter a separate
2  Order requiring the appropriate government agency to collect and forward the fees according
3  to the statutory formula.

4  **II.      Statutory Screening of Prisoner Complaints**

5  The Court is required to screen complaints brought by prisoners seeking relief against
6  a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.
7  § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised
8  claims that are legally frivolous or malicious, that fail to state a claim upon which relief may
9  be granted, or that seek monetary relief from a defendant who is immune from such relief.
10 28 U.S.C. § 1915A(b)(1), (2).

11 **III.     Complaint**

12 Plaintiff alleges three counts in his Complaint for excessive use of force,
13 unconstitutional medical care, and violation of due process in connection with disciplinary
14 proceedings.  Plaintiff sues the following CCA employees at SCC: Warden Todd Thomas;
15 Assistant Wardens Jody Bradley and Ben Griego; Assistant Chief Meiner; Grievance Co-
16 ordinator Juan Valenzuela; Health Service Administrator Patricia Sells; Chief of Security
17 Lopez; Chief of Unit Managers Carrier; Unit Managers Garcia and Dobson; Sergeant Macci;
18 Correctional Officers Landreth, Brinson, and Rocha; and Hawaii Contract Manager Scott
19 Jinbo.  Plaintiff seeks declaratory, injunctive, compensatory, and punitive relief.

20 **IV.     Failure to State a Claim**

21 To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the
22 conduct about which he complains was committed by a person acting under the color of state
23 law and (2) the conduct deprived him of a federal constitutional or statutory right.  Wood v.
24 Ostrander, 879 F.2d 583, 587 (9th Cir. 1989).  In addition, a plaintiff must allege that he
25 suffered a specific injury as a result of the conduct of a particular defendant and he must
26 allege an affirmative link between the injury and the conduct of that defendant.  Rizzo v.
27 Goode, 423 U.S. 362, 371-72, 377 (1976).
28 / / /

### A.     Count II

In Count II, Plaintiff alleges that after officers used excessive force against him, Unit Managers Garcia and Dobson of the response team delayed a medical examination of Plaintiff until "pill call" later in the evening and would not allow Plaintiff to be properly examined outside his cell.  Plaintiff alleges that he filed a grievance but did not receive a response until nine months later.[3]  During that period, Plaintiff submitted numerous sick call requests to Health Services Administrator Sells, Garcia, and Grievance Co-ordinator Valenzuela pertaining to the incident.  Plaintiff alleges that he has suffered pain from his injuries and psychological torture that he would be denied medical care unless he was dying.

To state a claim for denial of constitutionally adequate medical care, a plaintiff must allege facts to support that he has or had a serious medical need and that a particular defendant acted with deliberate indifference to that need.  See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003).  To allege a serious medical need, a plaintiff must set forth facts to support that the "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).  A plaintiff must also allege facts to support that a defendant was deliberately indifferent to a serious medical need.  "Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  Deliberate indifference may occur if "prison officials deny, delay or intentionally interfere with medical treatment."  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir.1988).  Mere negligence, however, "in diagnosing or treating a medical

---

[3] To the extent that Plaintiff complains about non-compliance with grievance procedures, he fails to state a claim.  Inmates do not have a protected liberty interest in prison grievance procedures because there is no free-standing constitutional right to a grievance process.  Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 493 (8th Cir. 1993) (*per curiam*); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

1  condition, without more, does not violate a prisoner's Eighth Amendment rights." Lopez,
2  203 F.3d at 1132 (quoting Hutchinson, 838 F.2d at 394).  Further, a delay in receiving
3  medical care, without more, is insufficient to state a claim against a jailor for deliberate
4  indifference unless the plaintiff can show that the delay in treatment harmed him.  Shapley
5  v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  A difference in
6  medical opinion also does not amount to deliberate indifference.  See Toguchi, 391 F.3d at
7  1058.  Rather, to prevail on a claim involving choices between alternative courses of
8  treatment, a prisoner must show that the chosen course was medically unacceptable under
9  the circumstances and was chosen in conscious disregard of an excessive risk to the
10 prisoner's health.  Id.  Similarly, differences in judgment between an inmate and prison
11 medical personnel regarding appropriate medical diagnosis or treatment are not enough to
12 state a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).
13       Plaintiff alleges in Count I that he suffered bruises, headaches, and joint pain due to
14 an alleged use of excessive force.  While Plaintiff alleges that treatment of his injuries were
15 delayed after the incident, he fails to set forth specific facts to support that he had a serious
16 medical need or that the delay could have resulted in significant injury or the unnecessary
17 and wanton infliction of pain.  Plaintiff also fails to set forth facts to support that any
18 Defendant acted with deliberate indifference to any serious medical need.  For these reasons,
19 Plaintiff fails to state a claim regarding medical care in Count II.
20    **B.    Count III**
21       In Count III, Plaintiff asserts a denial of due process in connection with disciplinary
22 proceedings. Plaintiff alleges that on July 18, 2008, he was charged with a major infraction
23 and placed in administrative segregation pending a hearing.  On July 20, 2008, he received
24 his "appeal" back from Warden Thomas, who voided the charge.  On July 24, 2008, Assistant
25 Warden Griego  informed Plaintiff that he should be returned to his former status with "back
26 time accredited to [him] for the Segregation Housing Incentive Program" (SHIP).  Plaintiff
27 informed a committee comprised of Assistant Warden Bradley, Chiefs Lopez, Meiner, and
28 Carrier, Unit Manager Garcia, and Contract Monitor Jinbo, about what Griego had told

1  Plaintiff. They informed Plaintiff that return to his former status was not automatic despite
2  what the warden did, and placed Plaintiff back in administrative segregation, where he has
3  remained for seven months. Plaintiff alleges that in administrative segregation, he is locked
4  down for 23 hours a day, five days a week; allowed only three showers a week and one
5  phone call a month; can spend only $10 at the commissary; and must be cuffed up for all
6  transport.

7  Liberty interests which entitle an inmate to due process are "generally limited to
8  freedom from restraint which, while not exceeding the sentence in such an unexpected
9  manner as to give rise to protection by the Due Process Clause of its own force, nonetheless
10 imposes atypical and significant hardship on the inmate in relation to the ordinary incidents
11 of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal citations omitted).
12 Thus, a prisoner may challenge a disciplinary action which deprives or restrains a
13 state-created liberty interest in some "unexpected manner." Ramirez v. Galaza, 334 F.3d
14 850, 860 (9th Cir. 2003) (citing Sandin, 515 U.S. at 483-84). A claim that prison officials
15 "added things" to an appeal to mask procedural errors does not, for example, meet this
16 standard because inmates lack a separate constitutional entitlement to a specific prison
17 grievance procedure. Ramirez, 334 F.3d at 860 (citing Mann v. Adams, 855 F.2d 639, 640
18 (9th Cir. 1988)). Second, a prisoner may challenge a state action that does not restrain a
19 protected liberty interest, but that "nonetheless imposes atypical and significant hardship on
20 the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

21 In analyzing whether a hardship is atypical and significant, three guideposts to
22 consider are: (1) the conditions of confinement; (2) the duration of the condition and the
23 degree of restraint imposed; and (3) whether the sanction will affect the duration of the
24 prisoner's sentence. Ramirez, 334 F.3d at 861; Keenan v. Hall, 83 F.3d 1083, 1088-89 (9th
25 Cir. 1996). "Atypicality" requires not merely an empirical comparison, but turns on the
26 importance of the right taken away from the prisoner. See Carlo v. City of Chino, 105 F.3d
27 493, 499 (9th Cir. 1997); see, e.g., Sandin, 515 U.S. at 472 (30 days disciplinary segregation
28 is not atypical and significant); Torres v. Fauver, 292 F.3d 141, 151 (3d Cir. 2002) (four

1 months in administrative segregation is not atypical and significant); Griffin v. Vaughn, 112
2 F.3d 703, 706-08 (3d Cir. 1997) (15 months administrative segregation is not atypical and
3 significant); Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997) (6 months of confinement
4 in especially disgusting conditions that were "more burdensome than those imposed on the
5 general prison population were not atypical ... in relation to the ordinary incidents of prison
6 life."); Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (two years in administrative segregation
7 is not atypical and significant); Jacks v. Crabtree, 114 F.3d 983 (9th Cir. 1997) (denial of
8 year sentence reduction is not an atypical and significant hardship).  "As long as the
9 conditions or degree of confinement to which the prisoner is subjected is within the sentence
10 imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause
11 does not in itself subject an inmate's treatment by prison authorities to judicial oversight."
12 Montanye v. Haymes, 427 U.S. 236, 242 (1976).  Therefore, to determine whether an inmate
13 is entitled to the procedural protections afforded by the Due Process Clause, the Court must
14 look to the particular restrictions imposed and ask whether they "'present the type of atypical,
15 significant deprivation in which a state might conceivably create a liberty interest.'" Mujahid
16 v. Meyer, 59 F.3d 931, 932 (9th Cir. 1995) (quoting Sandin, 515 U.S. at 486).

17 Plaintiff alleges that he has been held in administrative segregation for seven months.
18 Although he alleges that conditions in administrative segregation are more restricted than in
19 general population, he does not allege facts to support that conditions in administrative
20 segregation constitute an atypical and significant hardship in relation to the ordinary
21 incidents of prison life.  Plaintiff therefore fails to state a claim for violation of his due
22 process rights.

23 **V.     Claim for Which an Answer Will be Required**

24 In Count I, Plaintiff alleges that Defendants Macci, Landreth, Rocha, and Brinson
25 escorted him from a cell in which he had been assigned to a bottom bunk to a new housing
26 assignment. Along the way, they began pushing, tugging, and calling Plaintiff names. When
27 they arrived at Plaintiff's new cell, Rocha slammed Plaintiff into the wall twice.  Plaintiff
28 asked to speak to a unit manager about assignment to a bottom bunk, when Macci, Landreth,

1  Rocha, and Brinson began kicking, punching, pushing, and jumping on Plaintiff resulting in
2  injuries.  Defendants Macci, Landreth, Rocha, and Brinson will be required to respond to
3  Count I of the Complaint.

4  **VI.    Warnings**

5      **A.    Release**

6      Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.
7  Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay
8  the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result
9  in dismissal of this action.

10     **B.    Address Changes**

11     Plaintiff must file and serve a notice of a change of address in accordance with Rule
12 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other
13 relief with a notice of change of address.  Failure to comply may result in dismissal of this
14 action.

15     **C.    Copies**

16     Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy
17 of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate
18 stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit
19 an additional copy of every filing for use by the Court.  See LRCiv 5.4.  Failure to comply
20 may result in the filing being stricken without further notice to Plaintiff.

21     **D.    Possible Dismissal**

22     If Plaintiff fails to timely comply with every provision of this Order, including these
23 warnings, the Court may dismiss this action without further notice.  See Ferdik v. Bonzelet,
24 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to
25 comply with any order of the Court).

26 **IT IS ORDERED:**

27     (1)    Plaintiff's Application to Proceed *In Forma Pauperis*, filed with the Complaint,
28 is **granted**.  (Doc.# 3.)

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $5.84.

(3) Counts II and III and Defendants Thomas, Bradley, Griego, Valenzuela, Sells, Lopez, Meiner, Carrier, Garcia, Jinbo, and Dobson are **dismissed** without prejudice.

(4) Defendants Landreth, Macci, Brinson, and Rocha must answer Count I.

(5) The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. #1), this Order, and both summons and request for waiver forms for Defendants Landreth, Macci, Brinson, and Rocha.

(6) Plaintiff must complete and return the service packet to the Clerk of Court within 20 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(I).

(8) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. The Marshal must immediately file requests for waivers that were returned as undeliverable and waivers of service of the summons. If a waiver of service of summons is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service

for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11) Defendant must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13) This matter is referred to Magistrate Judge Jay R. Irwin pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 25th day of March, 2009.

_____
Mary H. Murguia
United States District Judge